IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| vs. | § | Cv. No. 07-2858-B/An |
|  | § | Cr. No. 04-20289-B |
| BARRY FERGUSON, | § | |
| Defendant. | § | |

ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

On December 31, 2007, Defendant Barry Ferguson, Bureau of Prisons inmate registration number 15417-076, an inmate at the Federal Correctional Institution in Forrest City, Arkansas, filed a pro se motion pursuant to 28 U.S.C. § 2255.

On July 13, 2004, a federal grand jury returned a three-count indictment against Ferguson. The first count charged Ferguson with possession of approximately one hundred forty (140) grams of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The second count alleged Ferguson possessed more than five (5) grams of cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The third count charged Ferguson with possession of approximately two (2) pounds of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Ferguson appeared before this judge on August 7, 2006, the day the trial was scheduled to commence, to plead guilty to count 2 of the indictment in exchange for a negotiated sentence of sixty-three (63) months. The Defendant preserved his right to appeal the denial of his suppression motions. A written plea agreement was filed on November 6, 2006, the day on which sentence was imposed. The Court sentenced Ferguson to sixty-three (63) months imprisonment, to be followed by a four-year period of supervised release. Judgment was entered on November 9, 2006. The United States Court of Appeals for the Sixth Circuit affirmed. <u>United States v. Ferguson</u>, No. 06-6500, 2007 WL 3226194 (6th Cir. Oct. 26, 2007).

Ferguson has now filed a § 2255 motion that raises the following issues:

1. Whether his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment;

2. Whether the admission of hearsay evidence in connection with the issuance of the search warrant violated the Confrontation Clause;

3. Whether the search warrant affiant misrepresented the affidavit by making false statements and omitting information; and

4. Whether there was a lack of probable cause for the issuance of a warrant.

The Court will address issues 2-4 before turning to the ineffective assistance claim.

In his second claim for relief, the Defendant argues that the admission of hearsay evidence in connection with the issuance of the search warrant violated the Confrontation Clause.

On direct appeal, Ferguson raised the issue of probable cause for the issuance of the search warrant and, in particular, he challenged the use of an unnamed confidential informant. The Sixth Circuit rejected his position on the merits:

> [W]hen considering the issuing magistrate's actions, we have observed that "[t]he standard of review for determining the sufficiency of the affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.' We do not engage in de novo review of the affidavit, but '[r]ather the magistrate's probable cause determination should be afforded great deference.'" United States v. Rodriquez-Suazo, 346 F.3d 637, 643 (6th Cir. 2003) (quoting United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991)). "This circuit has long held that an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." United States v. Allen, 211 F.3d 970, 973 (6th Cir.) (en banc), cert. denied, 531 U.S. 907 . . . (2000). When evaluating the sufficiency of the affidavit under this deferential standard, the affidavit must be considered as a whole; "'line-by-line scrutiny [of an underlying affidavit is] . . . inappropriate in reviewing [a] magistrate['s] decisions.'" Id. at 973 (alterations and omission in original) (quoting Illinois v. Gates, 462 U.S. 213, 246 n.14 . . . (1983)).
>
> . . . .
>
> Our cases have identified three categories of informants: (1) named informants; (2) confidential informants, who are known to the affiant but not to the magistrate; and (3) anonymous informants, who are known to no one but the informant. Whereas naming an informant is often, but not always, an indicator of reliability, 2 Wayne R. LaFave, Search and Seizure § 3.3(c) at 136 (4th ed. 2004), the police must find other ways to bolster the tips of the other, confidential or anonymous, informants. For instance, we demand consideration of an informant's "veracity, reliability, and 'basis of knowledge'" when dealing with a confidential informant, as we are in this case. Rodriquez-Suazo, 346 F.3d at 646 (quoting United States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999)). These factors are not evaluated independently; rather, the presence of more of one factor makes the others less important. For instance, the more reliable the informant,

the less detail the informant must provide in his tips before a magistrate can find probable cause. See Gates, 462 U.S. at 233.

In its brief, the government leans heavily upon Allen. We conclude, however, that Allen is inapposite, because although Allen suggested that a magistrate may find probable cause where an affiant simply attests to the reliability of the informant, Allen involved a named informant, not a confidential informant. Allen, 211 F.3d at 976. Our post-Allen confidential informant cases, in contrast, have continued our pre-Allen approach of demanding that an affidavit demonstrate more than simply blind faith in the words of an affiant who claims his unnamed informant is reliable. For example, in Rodriquez-Suazo, even though the officer's confidential informant had provided prior tips that resulted in over three arrests and convictions, the police still conducted some (albeit minimal) corroboration of the tip in question. 346 F.3d at 646-47. Similarly, in United States v. May, 399 F.3d 817 (6th Cir. 2005), we held that the tip of an unnamed confidential informant can support a finding of probable cause when "the issuing judge had before him 'additional evidence [that] buttressed the informant's information.'" 399 F.3d at 824 (quoting United States v. Williams, 224 F.3d 530, 532 (6th Cir. 2000)). One piece of additional evidence that the May court considered was that the informant had provided reliable information in the past, but we also considered the independent corroboration by the police. See also United States v. Williams, 224 F.3d 530, 532-33 (6th Cir. 2000) (finding probable cause from an affidavit that relied on a confidential informant who had previously provided information leading to arrests and convictions, but where the affiant also mentioned his own personal knowledge regarding the sale of drugs at the location to be searched and the affiant separately informed the issuing judge about police surveillance of the residence), cert. denied, 531 U.S. 1095 . . . (2001).

Applying this precedent, we conclude that the issuing chancellor had a substantial basis to conclude that there was probable cause to believe that a search of Ferguson's residence would yield evidence of criminal conduct. Officer Harrison did not name his confidential informant for the chancellor; thus, in evaluating the reliability of the tip and the existence of probable cause, the chancellor required additional bolstering information. In this case, the officer attested to the confidential informant's prior successful assistance five previous times and also discussed his own efforts at

corroborating elements of the confidential informant's tip. These two factors combine to provide a substantial basis for the issuing chancellor's probable-cause determination.[1]

United States v. Ferguson, 2007 WL 3226194, at *5-*6.

"[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999); see DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996). In this case, the Sixth Circuit's decision necessarily presupposes the legitimacy of obtaining a search warrant based on use of an affidavit that relates information received by a confidential informant. The Sixth Circuit also found that there was sufficient corroboration of the information provided by the confidential informant to support a finding of probable cause. No exceptional circumstances exist that warrant revisiting those issues.

Moreover, this issue is lacking in merit. The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be

---

[1] The Sixth Circuit also observed, in a footnote, that

[b]ecause the confidential informant in this case had provided a significant level of prior and accurate assistance in the past, we need not consider the concern that Officer Harrison corroborated only innocent facts. See LaFave, § 3.3(f) at 189 ("[A] lesser quantum of corroboration may be legitimately relied upon in combination with other circumstances tending to show veracity even if no one of them alone would suffice."). Had the confidential informant not had a track-record of veracity and reliability, we would be required to resolve at what point the "corroboration of a very few nonsuspicious and easily predictable events should not suffice." Id. at 187-88.

United States v. Ferguson, 2007 WL 3226194, at *6 n.4.

5

confronted with the witnesses against him." The Confrontation Clause is inapplicable to ex parte applications for search warrants, which occur prior to the commencement of criminal prosecutions. United States v. Harris, 403 U.S. 573, 584 (1971). As suspects have no right to prior notice of search warrant applications, it necessarily follows that they also have no right to cross-examine any witness relied on by law enforcement authorities, either directly or indirectly, to establish probable cause. Cf. Franks v. Delaware, 438 U.S. 154, 169 (1978) ("The pre-search proceeding is necessarily ex parte, since the subject of the search warrant cannot be tipped off to the application for a warrant lest he destroy or remove evidence.").

The Supreme Court has also held that the Sixth Amendment does not give criminal defendants the right to call confidential informants to testify at suppression hearings, explaining as follows:

> The petitioner does not explain precisely how he thinks his Sixth Amendment right to confrontation and cross-examination was violated by Illinois' recognition of the informer's privilege [at the probable cause hearing] in this case. If the case is that the State violated the Sixth Amendment by not producing the informer to testify against the petitioner, then we need do no more than repeat the Court's answer to that claim a few weeks ago in Cooper v. State of California:
>
> "Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront a witness against him, because the State did not produce the informant to testify against him. This contention we consider absolutely devoid of merit." 386 U.S. 58, at 62, n.2 . . . .
>
> On the other hand, the claim may be that the petitioner was deprived of his Sixth Amendment right to

> cross-examine the arresting officers themselves, because their refusal to reveal the informer's identity was upheld. But it would follow from this argument that no witness on cross-examination could ever constitutionally assert a testimonial privilege, including the privilege against compulsory self-incrimination guaranteed by the Constitution itself. We have never given the Constitution such a construction, and we decline to do so now.

McCray v. Illinois, 386 U.S. 300, 313-14 (1967); see also Pennsylvania v. Ritchie, 480 U.S. 39, 54 n.10 (1987) ("[T]he Court normally has refused to find a Sixth Amendment violation when the asserted interference with cross-examination did not occur at trial."); United States v. Matlock, 415 U.S. 164, 174-75 (1974).

At the conclusion of a hearing on a suppression motion, held on March 23, 2005, Ferguson complained that his attorney had taken no steps to discover the identity of the confidential informant used in this case. (03/23/05 Tr. (Criminal Docket Entry ("Cr. D.E.") 63) at 77-82.) The Court conducted a suppression hearing on the issue of probable cause on December 8, 2005 and, at the conclusion of that hearing, ruled on the record that the issuing judge had probable cause to support the issuance of the warrant. (12/08/05 Tr. (Cr. D.E. 98) at 27-33.) In so holding, the Court explicitly stated that the issuing judge's determination of probable cause

> may be based on [a] confidential informant's hearsay as long as the issuing judge is reasonably sure the informant is credible and the information reliable. And again, that goes into the question of whether or not there had been other situations where the informant had provided information that resulted in something that would make his or her statements reliable.

7

(Id. at 31.) The Fourth Amendment does not prohibit the use of hearsay in search warrant applications, see, e.g., Aquilar v. Texas, 378 U.S. 108, 114 (1964), but the issuing judge must be given sufficient corroborating information to permit a finding of probable cause. In this case, as previously mentioned, see supra pp. 3-5, the Sixth Circuit affirmed that ruling, holding that there was sufficient corroboration of the hearsay evidence provided by the confidential informant.

The second issue is without merit and is DISMISSED.

In his third issue, Ferguson asserts that the search warrant affiant misrepresented the affidavit by making false statements and omitting information. The Defendant appears to be arguing that he was entitled to a hearing, under Franks v. Delaware, 438 U.S. 154 (1978), because he had credible evidence that the affiant made deliberate or reckless misstatements or omissions in the search warrant affidavit. Ferguson contends that "[n]o one that fits Agent Harrison's description as his confidential informant has ever been in my home." (D.E. 1-2 at 5.)

Ferguson raised this issue on direct appeal, and the Sixth Circuit rejected it on the merits:

> Ferguson claimed in his brief that "[d]ue to the denial of the trial court to allow counsel to assess the 'totality of circumstances' that the officer knew at the time the warrant was issued, the Appellant's Fourteenth Amendment Due Process Rights were violated." Appellant Br. at 8. During the incident in question, Ferguson called the affiant, Harrison, as a witness in the hearing on the motion to suppress challenging the existence of probable cause. As Ferguson's attorney tried to ask questions about actions that Harrison might have taken, but not reported, to corroborate the CI's tip, the

8

district court repeatedly emphasized [sic] skepticism over the value of the testimony. After interrupting the questioning three times with concerns about relevancy, the district court decided that Harrison's efforts to corroborate the CI's tip, beyond what was described in the affidavit, were irrelevant to the evaluation of probable cause, and the court stopped this line of questioning. In response, Ferguson concluded his questioning of Harrison.

A trial judge has broad discretion to control testimony in her court to ensure that only relevant evidence is presented and that the court's time is not wasted. See Fed.R.Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."). Accordingly, "courts may curtail or entirely preclude questioning as to any matter of questionable relevance." 28 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6164, at 357 & n. 49 (1993).

We cannot conclude that the district court judge's actions constitute an abuse of discretion. Ferguson was trying to elicit testimony as to any additional information the affiant Harrison had but did not disclose at the time the warrant was issued. Generally speaking, however, the sufficiency of an affidavit is judged solely upon "the adequacy of what it does contain, not on what it lacks." Allen, 211 F.3d at 975. The one exception to this general rule is that in a Franks hearing, pursuant to Franks v. Delaware, 438 U.S. 154 . . . (1978), a defendant can try to show that the affiant omitted some material fact that would have swayed the magistrate's probable-cause determination. See Hale v. Kart, 396 F.3d 721, 726 n.4 (6th Cir. 2005). Although such questions about Harrison's knowledge at the time he requested a warrant would be relevant in a Franks hearing, Ferguson was not in a Franks hearing when his attorney attempted to ask these questions. Thus, the questioning was not relevant in the context in which it was occurring.

Furthermore, to qualify for a Franks hearing, a defendant must "make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [ ] the allegedly false statement is necessary to the finding of

9

> probable cause." Franks, 438 U.S. at 155-156; see also United States v. Graham, 275 F.3d 490, 505 (6th Cir. 2001), cert. denied, 535 U.S. 1026 . . . (2002). It appears from the record that Ferguson could not have made the substantial preliminary showing necessary to qualify. While Ferguson had asked both of his attorneys to seek a Franks hearing, his attorneys refused on ethical grounds. J.A. at 193 (Tr. at 5:12-17) ("Both Mr. Brown[, Ferguson's original attorney,] and I have told Mr. Ferguson that we can't ethically do that, and I'm not going to perpetrate fraud on a court.").
>
> Accordingly, we cannot conclude that it was an abuse of discretion for the district court to limit testimony that could have been relevant only for a hearing that Ferguson was not then seeking, and was apparently not entitled to obtain.

United States v. Ferguson, 2007 WL 3226194, at *7-*8 (footnote omitted).

As previously stated, see supra p. 5, a § 2255 motion cannot be used to relitigate issues decided on direct appeal. No exceptional circumstances exist in this case. Ferguson has not made a credible showing that Agent Harrison made any deliberate or reckless misrepresentation in the search warrant affidavit. The relevant inquiry in a Franks hearing is whether the affiant lied or made a reckless misrepresentation, not whether the confidential informant lied to police. Although Ferguson appears to assert that no purchaser of narcotics was inside his home on the five days prior to April 23, 2004, see supra p. 8, or, alternatively, that no such person was also inside his home on two additional occasions during the two weeks prior to April 23, 2004, the search warrant affidavit does not explicitly represent that the confidential

10

informant was ever inside Ferguson's house.[2] The confidential informant represented only that <u>Ferguson</u> was inside the home during the transaction within five days of April 23, 2004, which suggests that the transaction may have occurred in the doorway or on the front steps. The confidential informant also reported that the two previous occasions on which he or she saw Ferguson with narcotics occurred "at" Ferguson's address, not inside the house.

As the Sixth Circuit recognized, Ferguson did not satisfy the threshold requirements for a <u>Franks</u> hearing that he make a specific challenge to the affidavit, accompanied by allegations of deliberate falsehood or of reckless disregard for the truth, and accompanied by an offer of proof. 438 U.S. at 171. In this § 2255 motion, the Defendant makes only a conclusory assertion that no person matching the description of the confidential informant was in his home during the relevant period, and he clearly hopes to support his position by cross-examining the officer to discover the identity of the informant. He is not entitled to do so.

The third issue is without merit and is DISMISSED.

In his fourth issue, Ferguson argues that there was not probable cause for the issuance of the search warrant. Although this issue is not clearly articulated, he appears to contend that the information provided by the confidential informant was too general to establish probable cause. (D.E. 1-2 at 8.)

---

[2]  A copy of the search warrant affidavit is attached to the Government's Response to Defendant's Motion to Suppress, filed Jan. 21, 2005 (Cr. D.E. 26).

Ferguson raised this issue on direct appeal, and the Sixth Circuit also rejected it:

> Additionally, Ferguson urges this court to overturn the district court's denial of the motion to suppress because the confidential informant "only gave general information, not explicit and detailed information of any wrongdoing." Appellant Br. at 7. In particular, the Appellant suggests that there can be no probable cause when the informant does not provide specific dates of sales, the names of buyers, the location of the drugs, or specific details about the home or car mentioned in the tip. Id.
>
> Although an affidavit "'must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant,'" United States v. Gardiner, 463 F.3d 445, 470 (6th Cir. 2006) (quoting United States v. Weaver, 99 F.3d 1372, 1377 (6th Cir. 1996)), we have never required the level of detail that Ferguson demands. The Allen court, for example, upheld a finding of probable cause when the informant claimed there were drugs at a named location and that the informant had personally observed the drugs within seventy-two hours of the tip. Allen, 211 F.3d at 971-72. The informant's tip in Allen, similar to Harrison's informant's tip, lacked many specifics; the warrant was not specific as to the amount of cocaine and there was no explanation of how the informant was able to identify the powder as cocaine. Id. at 975; see also Rodriquez-Suazo, 346 F.3d at 647 (upholding a finding of probable cause where the informant did not offer details on prior drug sales he supposedly witnessed, but did note that he had witnessed the suspect in a drug sale within the last forty-eight hours); Williams, 224 F.3d at 531-33 (upholding a finding of probable cause where the informant stated only that he had observed the suspect in possession of cocaine at the residence in the last seventy-two hours).
>
> Our evaluation of the specificity of an informant's tip is not an independent consideration; the level of generality is but one factor that the issuing magistrate must consider in the probable-cause determination that we have already discussed here. We conclude that in this case, although the confidential informant did not provide certain specifics, he did claim to have seen a drug sale within five days of his tip, and this level of generality is not, by itself, fatal to the chancellor's finding of probable cause.

United States v. Ferguson, 2007 WL 3226194, at *6-*7.

As previously stated, see supra p. 5, a § 2255 motion may not be used to relitigate matters that were decided on direct appeal. No exception to this general rule is applicable here. The fourth issue is without merit and is DISMISSED.

In his first issue, Ferguson insists that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment. In particular, the Defendant faults the handling of the probable cause issue by his trial and appellate counsel.

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

To demonstrate deficient performance by counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy

> for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citation omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1999) ("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'") (citations omitted).

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds

a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697.

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (citing United States v. Cronic, 466 U.S. 648, 658 (1984)); see also Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart, 506 U.S. at 369.

Each of the instances of deficient performance cited by Ferguson was either raised on direct appeal and rejected or is without merit as a matter of law. Therefore, the Defendant cannot establish either deficient performance or prejudice. The first issue is without merit and is DISMISSED.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b), Rules Governing Section 2255 Motions in the United States District Courts. The Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986). Defendant's conviction and sentence are valid and therefore, his motion is DENIED.

Consideration must also be given to issues that may occur if Defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

"'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court has cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[3]

---

[3] The Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

17

In this case, for the reasons previously stated, Defendant's claims are plainly lacking in substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. If Defendant files a notice of appeal, he must also pay

the full $455 appellate filing fee or file a motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

  IT IS SO ORDERED this 25th day of January, 2008.

           <u>s/ J. DANIEL BREEN   </u>
           UNITED STATES DISTRICT JUDGE